UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:15-CV-00734-TBR


KATRINA MCKENZIE                                                    Plaintiff

v.

DENN-OHIO LLC                                                      Defendant

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendant's motion to dismiss and motion for summary judgment. (Docket #7). Plaintiff has responded. (Docket #10). Defendant has replied. (Docket #11). These matters now are ripe for adjudication. For the following reasons, Defendant's motion to dismiss and motion for summary judgment is DENIED.


BACKGROUND

This action arises out of Plaintiff Katrina McKenzie's termination from Defendant Denn-Ohio, LLC d/b/a Denny's ("Denn-Ohio"). McKenzie was hired as a waitress by Denn-Ohio on July 31, 2014. McKenzie claims that her manager, Joey Goode, immediately began to sexually harass her, requesting sexual favors in exchange for money.

McKenzie was hired to work at the Denny's located at 4030 Dutchmans Lane (the "Dutchmans Lane Denny's") in Louisville, Kentucky. McKenzie reported the sexual harassment to Tammy Lorenzo, the manager of the Denny's located at 434 Eastern

Parkway (the "Eastern Parkway Denny's") in Louisville, Kentucky.  McKenzie also asked Lorenzo for a transfer to the Eastern Parkway Denny's.

The parties do not dispute that McKenzie reported sexual harassment and requested a transfer to the Eastern Parkway Denny's.  However, the parties strongly dispute the facts surrounding McKenzie's transfer to the Eastern Parkway Denny's and the settlement of McKenzie's sexual harassment claim.

Denn-Ohio claims McKenzie requested a transfer on September 7 or 8, 2014. Lorenzo scheduled McKenzie to work shifts at the Eastern Parkway Denny's on September 25 and 26.  Lorenzo instructed McKenzie to call the Eastern Parkway Denny's to get her schedule, but McKenzie did not.  McKenzie was absent for her first two shifts. Denn-Ohio claims that according to its employee handbook, "[a]n employee who fails to report to work or to report an absence for two (2) consecutive workdays or twice during a six-month period, will be considered to have voluntary resigned effective the last day worked."  (Docket #7).  Therefore, according to Denn-Ohio, McKenzie's final day of work was August 11, the day McKenzie worked her last shift at the Dutchmans Lane Denny's.

Denn-Ohio further claims that on September 30, 2014, McKenzie met with Jack Thompson and Scott Baker regarding McKenzie's sexual harassment claim.  The parties agreed upon a settlement of $800 in exchange for McKenzie releasing all claims against Goode and Denn-Ohio.  Thompson and Baker informed McKenzie that she would not be able to work for Denn-Ohio if she accepted a settlement payment.  Denn-Ohio subsequently paid McKenzie $640, which represented her $800 settlement minus payroll

withholdings and other deductions.  McKenzie complained about this amount and Denn-Ohio paid an additional $75.20.  McKenzie made arrangements with Baker via text to pick up this second payment at the Eastern Parkway Denny's, which McKenzie picked up on October 7, 2014.  (Docket #7-2).  Approximately one week later Baker mistakenly texted McKenzie "[m]y area up over 2%."  (Docket #7-2).  After Baker explained that the text was meant for another person, McKenzie responded "Ok u got a job for me lol just playing."  (Docket #7-2).  Denn-Ohio argues this text shows that McKenzie was aware that she was not an employee of Denn-Ohio and could not be rehired.

McKenzie claims she requested a transfer to the Eastern Parkway Denny's on the day that she reported sexual harassment to Lorenzo.  McKenzie claims Lorenzo told her that Lorenzo would call her to inform her about the schedule.  McKenzie says she never received a call from Lorenzo.  McKenzie went to the Eastern Parkway Denny's on September 18 or 19 and talked to Lorenzo about her schedule.  McKenzie also claims she called to talk to Lorenzo, but Lorenzo was never present.[1]

McKenzie agrees she met with Thompson and Baker on September 30, 2014.  However, McKenzie contends that at that time she still expected to work at the Eastern Parkway Denny's, but had not heard from Lorenzo about her schedule.  McKenzie claims that after she signed the settlement agreement, Thompson and Baker informed her that she could no longer work for Denn-Ohio.  McKenzie claims her October 13, 2014 text to Baker merely reflects her knowledge at that time that she could no longer work for Denn-Ohio.

---

[1] Lorenzo admits she talked to McKenzie on September 18 or 19 but claims she told McKenzie it was McKenzie's responsibility to call in for her schedule.  (Docket #7-3).

STANDARD

Summary judgment is proper if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence. To support this position, he must present evidence on which the trier of fact could find for the plaintiff. *See id.* (*citing Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

DISCUSSION

McKenzie claims Denn-Ohio retaliated against her in violation of Title VII of the Civil Rights Act of 1964, U.S.C. §2000e *et. seq.* and KRS 344.101 *et. seq.* Denn-Ohio

argues McKenzie's has not made out a *prima facie* case of retaliation because (I) there is no causal connection because McKenzie voluntarily left her job.  Alternatively, Denn-Ohio argues (II) McKenzie's retaliation claim is barred by the terms of the settlement agreement.  The Court finds there are disputed material facts which prevent these issues from being resolved on summary judgment.

## I.      Causal Connection.

To establish a *prima facie* case of retaliation, an employee must establish that "(1) he or she engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 345 (6th Cir. 2008).  "The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).  "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).[2]

McKenzie has made a *prima face* case by showing she reported sexual harassment, Denn-Ohio was aware of this fact, and Denn-Ohio subsequently terminated

---

[2] "An employee who alleges status-based discrimination under Title VII need not show that the causal link between injury and wrong is so close that the injury would not have occurred but for the act.  So-called but-for causation is not the test.  It suffices instead to show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision." *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2523 (2013).

McKenzie shortly after she reported the sexual harassment.

Denn-Ohio argues McKenzie's *prima facie* case fails because Denn-Ohio did not terminate McKenzie, but rather she voluntarily resigned.  Denn-Ohio relies on its employee handbook, which states:  "[a]n employee who fails to report to work or to report an absence for two (2) consecutive workdays or twice during a six-month period, will be considered to have voluntary resigned effective the last day worked."  (Docket #11).  McKenzie was allegedly scheduled to work on September 25 and 26, 2014, at the Eastern Parkway Denny's.  (Docket #7-3).  Denn-Ohio argues McKenzie voluntarily resigned when she failed to appear for work on September 25 and 26.  In response, McKenzie argues she was never informed about her shifts by Lorenzo.

The Court finds that it is a disputed issue of fact as to whether McKenzie was aware of her shifts on September 25 and 26 and voluntarily resigned.  McKenzie has put forth evidence that she sought a transfer and intended to work at the Eastern Parkway Denny's.  On September 7 or 8, McKenzie went to the Eastern Parkway Denny's to request a transfer.  Lorenzo acknowledges that McKenzie appeared and requested a transfer, but claims it was McKenzie's responsibility to call in for her schedule.  (Docket #7-3).  When McKenzie was not scheduled for work, she returned to the Eastern Parkway Denny's on September 18 or 19 and again talked with Lorenzo about transferring.  Both parties strongly contest who had the responsibility for informing McKenzie about her shift times after this meeting.  The mere fact that McKenzie was listed on the schedule and did not appear for work does not establish that McKenzie voluntarily resigned if, as McKenzie contends, she was never informed of these shifts.  Whether McKenzie knew of her shifts and simply failed to appear, or whether McKenzie was never informed about

6

these shifts, is a question of fact for a jury to decide.

## II.    Settlement Agreement.

On September 30, 2014, McKenzie and Denn-Ohio executed a settlement agreement and release of claims.  Denn-Ohio argues this release bars McKenzie's retaliation claim.  McKenzie argues she was unaware of her retaliation claim at that time and that the release only covered McKenzie's sexual harassment claim.

"Under Kentucky law, the scope of a release is determined by the intent of the parties, as evidenced by the language of the entire instrument and the surrounding facts and circumstances."  *Gardinella v. Gen. Elec. Co.*, 833 F. Supp. 617, 619 (W.D. Ky. 1993);  *Overberg v. Lusby*, 727 F. Supp. 1091, 1093 (E.D. Ky.) *aff'd*, 921 F.2d 90 (6th Cir. 1990).  "Where a contract is ambiguous or silent on a vital matter, a court may consider parol and extrinsic evidence involving the circumstances surrounding execution of the contract, the subject matter of the contract, the objects to be accomplished, and the conduct of the parties."  *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. Ct. App. 2002).  "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations."[3]  *Id*.  Although the "interpretation of a contract, including determining whether a contract is ambiguous, is a question of law for the courts," if the court "determines that a contract is ambiguous, areas of dispute concerning the extrinsic evidence are factual issues and construction of the contract become subject to resolution by the fact-finder."  *Id*.

---

[3] "Ambiguity may be patent or latent."  *Journey Acquisition-II, L.P. v. EQT Prod. Co.*, 39 F. Supp. 3d 877, 890 (E.D. Ky. 2014).  "A patent ambiguity exists where the contract language is uncertain on its face."  *Id*.  "Contract language, like statutory language, may be clear on its face and yet contain a latent ambiguity."  *State Farm Mut. Auto. Ins. Co. v. Slusher*, 325 S.W.3d 318, 322 (Ky. 2010).

The release and settlement agreement is a one-page document, the body of which states:

Subject:  Resolution to Claims of Sexual Harassment by Joey Goode towards Katrina Mckenzie

As evidence to the good faith and effort to resolve the above referenced charge.  Both parties agree that Denn-Ohio LLC will pay $800[4] minus all taxes as full and final settlement.  Payment will be in the mail by October 10th.

Both parties agree to keep strictly confidential, not to discuss, disclose, or permit or cause to disclose, other than the parties hereto, the discussion and or allegations made during the context of this meeting or the investigation of the claim.

Charging party (Katrina McKenzie) agrees to release Denn-Ohio LLC and Joey Goode from any and all claims as of the date of the signing of this Agreement.  (Docket #7-2).

The release was signed by McKenzie, Baker, and Thompson.  The release was originally dated September 24, 2014, but a handwritten edit which all parties initialed changed that to September 30, 2014.

Denn-Ohio argues the release bars McKenzie's retaliation claim because the release covers "any and all claims as of the date of the signing of this Agreement."  There are two reasons to doubt this interpretation.  First, the subject lines states the release is for "Resolution to Claims of Sexual Harassment by Joey Goode towards Katrina Mckenzie." (Docket #7-2).  It does not mention a wrongful termination ore retaliation claim.  Second, the release was originally dated September 24, 2014.[5]  McKenzie allegedly missed her shifts on September 25 and 26.  Therefore, for the release to cover McKenzie's retaliation claim, the release would have had to have been drafted in anticipation that McKenzie

---

[4] Originally printed as $250, with a handwritten edit to $800 initialed by all parties.

[5] This date was crossed out and changed to September 30.  Notably, the subject line was not enlarged nor were any other changes made to include McKenzie's retaliation claim in the release.

would miss those shifts and bring a retaliation claim.  Accordingly, the Court cannot conclude that the parties intended the release to cover McKenzie's retaliation claim.  The parties disagree as to whether McKenzie was informed that if she signed the agreement she would not be able to work for Denn-Ohio.  Denn-Ohio says she informed of this before she signed.  McKenzie says she was not.  The agreement makes no mention of the retaliation claim.  In light of the controverted facts the Court concludes the scope of the release is ambiguous and therefore requires additional fact-finding.

CONCLUSION

The Court finds there are material issues of disputed fact which make summary judgment inappropriate at this time.  Accordingly, for the foregoing reasons, Defendant's motion to dismiss and motion for summary judgment (Docket #7) is DENIED.

IT IS SO ORDERED.

cc:      Counsel